**James H. HAMPTON, Plaintiff,**

v.

**Thomas R. GILMORE et al.,
Defendants.**

**No. S72 C 34.**

United States District Court,
E. D. Missouri, S. D.

May 7, 1973.

James A. Cochrane, Jr. and John Mark Scully, Cape Girardeau, Mo., Court appointed, for plaintiff.

John L. Oliver, Oliver, Oliver & Jones, Cape Girardeau, Mo., for defendant Umphres.

Weber Gilmore, Sikeston, Mo., for defendant Gilmore and defendant Dennis.

Kenneth L. Dement, Sikeston, Mo., for defendant Bruce.

## MEMORANDUM AND ORDER

WEBSTER, District Judge.

This matter is before the court on the separate motions of each defendant to dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted and for summary judgment. See Fed. R.Civ.P. 12(b)(1) and (6) and 56. Plaintiff is represented by counsel previously appointed by Judge Wangelin.

### Plaintiff's Allegations

The allegations of the amended complaint may be summarized as follows: Plaintiff is a resident of Missouri, presently incarcerated in the United States Penitentiary at Marion, Illinois. At the time this claim arose, defendant Thomas R. Gilmore was Prosecuting Attorney for Scott County, Missouri; defendant John Dennis was Sheriff of Scott County; defendant Arthur Bruce was Chief of Police of Sikeston, Missouri; and defendant Ed Umphres was an employee of Southwestern Bell Telephone Company. On or about May 2, 1969, shortly after 10:45 p. m., plaintiff and his wife stopped their automobile at a pay-telephone booth, the exact location of which was unknown, but apparently in or near Sikeston, Missouri. Plaintiff made a long-distance call and then he and his wife proceeded in their automobile east toward Highway 61. Prior to reaching that highway, plaintiff's automobile was pulled over by a patrol car containing two Sikeston police officers. The two officers took plaintiff and his wife to the Sikeston city jail. At the jail, plaintiff and his wife were searched and then incarcerated. Plaintiff and his wife were incarcerated from May 3 to May 5, 1969, and "were held without benefit of counsel and subjected to repeated interrogations by officials representing the Southwestern Bell Telephone Company, employees of the Police Department of the City of Sikeston, and persons from

the Office of the Prosecuting Attorney of Scott County", and without plaintiff being informed of his *Miranda* warnings. The arrest, incarceration and interrogation were "committed by officers in the employ of the City of Sikeston, under the command of and at the direction of Arthur Bruce, Chief of the Sikeston Police Department, employees of the Southwestern Bell Telephone Company, and agents or employees of the Office of the Prosecuting Attorney of Scott County." Subsequently, plaintiff's automobile was searched "by person or persons unknown to this plaintiff, said persons representing the Police Department of Sikeston, Southwestern Bell Telephone Company and the Office of the Prosecuting Attorney, said search revealing a number of personal items belonging to this plaintiff, among which was his personal and private property of . . . $1,216.90 in cash, all of which property was seized by one or more of the defendants."

Plaintiff and his wife were charged with one count of possession of burglary tools, four counts of burglary and stealing, and four counts of malicious destruction of property. The charges were subsequently dismissed. Plaintiff's property was retained by the Office of the Sheriff of Scott County. The $1,216.90 was disposed of by the "Office of the Prosecuting Attorney of Scott County in conjunction with the Office of the Sheriff of Scott County pursuant to an agreement between Charles M. Shaw, attorney for this plaintiff . . ., and the employees of the Southwestern Bell Telephone Company, in which all costs arising from the charges were to be paid from the money seized and the balance given to Southwestern Bell Telephone Company, all without the knowledge or agreement of this plaintiff."

Plaintiff incorporated four exhibits, labeled A–D, which were attached to his original complaint. Exhibit A is a photocopy of a letter dated June 5, 1972, from Prosecuting Attorney Gilmore to plaintiff. The letter indicates that it is in response to papers sent by plaintiff to the clerk of the Magistrate Court of Sikeston. The letter states that enclosed are photocopies of correspondence from Charles M. Shaw on August 18, 1970, letter from Prosecuting Attorney Gilmore to Sheriff Dennis of September 17, 1970, and letter from Sheriff Dennis to defendant Umphres dated October 26, 1970, all in reference to the disposition of money "in the amount of $1,300.00." The letter further indicates that "[t]he burglary tools and keys will not be returned [because] [t]hey are suited for . . . only . . . an illegal use." Finally, the letter states that if there were an air rifle and binoculars among plaintiff's property, plaintiff should write Sheriff Dennis and ask him to return that property. Exhibit B is a photocopy of a letter from Charles M. Shaw to Prosecutor Gilmore. The letter indicates that it is in response to Gilmore's letter of August 4 and states in part:

"[I]t is perfectly agreeable that we proceed on the basis of your letter of August 4, which is as follows:

1. The State will dismiss the cases against both James Hampton and his wife, Mary Hampton.

2. The court costs shall be paid out of the seized property that the State is now holding in Scott County, Missouri.

3. After the court costs are paid, the balance of the seized property would be turned over to Southwestern Bell Telephone Company as restitution.

This is agreeable to my client and his wife, and this letter may be taken as proof thereof."

Exhibit C is a photocopy of a letter from Prosecutor Gilmore to Sheriff Dennis, dated September 17, 1970. This letter recites that since plaintiff has been sentenced in Oklahoma to two consecutive terms which will run approximately 19 years, the Prosecutor has en-

tered into an agreement with Shaw, plaintiff's attorney, to dismiss the cases pending in Scott County against plaintiff and his wife on the agreement that the seized funds will be used first to pay court costs, and second to pay restitution to Southwestern Bell. The letter goes on to detail the court costs and suggests that the balance be forwarded through defendant Umphres' office to Southwestern Bell. Exhibit D is a photocopy of a letter dated October 26, 1970 from Sheriff Dennis to defendant Umphres, reciting that Dennis was enclosing a check payable to Southwestern Bell in the amount of $757.75, the balance of the "recovered stolen money" after payment of court costs. The letter states that the distribution is in compliance with instructions from Prosecutor Gilmore and Charles Shaw, attorney for plaintiff and his wife.

These allegations are detailed in what is labeled Count I of the amended complaint and incorporated by reference into what is labeled Count II. Count I alleges that the arrest, confinement and search and seizure of plaintiff's property were illegal and that there was an "unlawful conspiracy" to dispose of plaintiff's property, and that as a direct result plaintiff was deprived of $1,216.-90 in cash. In Count I, plaintiff seeks judgment for $1,216.90, for return of his other personal property, and for other appropriate relief. Count II alleges that the arrest and confinement were illegal and were the result of a conspiracy to deprive plaintiff of his constitutional rights; and that these acts caused plaintiff grievous mental and emotional suffering, personal humiliation and embarrassment, and irreparable injury to his character in the amount of $100,000.00.

### Jurisdiction

Plaintiff complains of the following:

1. illegal arrest;

2. illegal search of his automobile and seizure of his personal property;

3. illegal interrogation; and

4. deprivation of his rights in certain property without due process of law.

Plaintiff's claim is based, *inter alia*, on 42 U.S.C. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."

Title 28, U.S.C. § 1343(3), commonly referred to as the jurisdictional counterpart of § 1983, provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*　　\*　　\*　　\*　　\*　　\*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

Defendants do not dispute this court's subject matter jurisdiction over the first three complained of acts listed above, but do contend that this court is without subject matter jurisdiction over plaintiff's claim for deprivation of property. Defendants argue that §§ 1983 and 1343(3) were never intended to provide a claim, cognizable in federal court, for the deprivation of property rights alone. This argument is without merit. In Lynch v. Household Finance Corporation, 405 U.S. 538, 542–543, 92 S.Ct.

1113, 1117, 31 L.Ed.2d 424 (1972), the Supreme Court said:

> "This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. Today we expressly reject that distinction.

> "Neither the words of § 1343(3) nor the legislative history of that provision distinguishes between personal and property rights. In fact, the Congress that enacted the predecessor of §§ 1983 and 1343(3) seems clearly to have intended to provide a federal judicial forum for the redress of wrongful deprivations of property by persons acting under color of state law."

### Summary Judgment

Matters outside the pleadings have been presented by plaintiff and defendants, and therefore all the motions will be treated as ones for summary judgment as provided in Rule 56. Fed.R. Civ.P. 12(b).

■ Summary judgment is an extreme remedy which should be employed only when the materials before the court show there is no genuine issue as to any material fact and the moving party is entitled to prevail as a matter of law. Any inference from the underlying facts must be drawn in favor of the party opposing summary judgment. *See* Giordano v. Lee, 434 F.2d 1227, 1230–1231 (8th Cir. 1970).

### Defendant Umphres.

Umphres' affidavit in support of his motion for summary judgment asserts the following facts: At all times relevant to this litigation, Umphres was security manager for Southwestern Bell Telephone Company. On May 4, 1969, an individual identifying himself as a member of the Police Department of Sikeston, Missouri telephoned Southwestern Bell and advised that plaintiff and his wife had been arrested for investigation of larceny from a coin telephone. Umphres received this information and then traveled to Sikeston, Missouri where he first inspected four coin telephones and found that they had been burglarized. Umphres was informed by Sikeston Police Department officials of the circumstances leading to the arrest of plaintiff and his wife, and that the police had found on their persons "an upper housing key, a ratchet wrench, a U-shaped wheel door puller tool with component parts and a lock picking instrument." Subsequently, Umphres discussed the matter with the Prosecuting Attorney or a member of his staff and indicated that, under the circumstances, Southwestern Bell would cooperate in the prosecution of plaintiff and his wife. On the afternoon of May 4 or the morning of May 5, 1969, Umphres attempted to interview plaintiff at the police station in Sikeston. When Umphres attempted to question plaintiff, he was immediately informed by plaintiff that he should not question him, that plaintiff knew and had been informed of his rights not to talk and that any contact he desired to have should be made with his attorney. Plaintiff did state in response to a question by Umphres that Daniel and Paul Hampton were his brothers. Umphres did not participate in the search of plaintiff or his wife or their automobile. Umphres did not participate in the arrest of plaintiff or his wife, nor was the arrest at his command or direction. Umphres did not at any time "enter into any agreement with any other person, either prior or subsequent to the arrest of James H. Hampton, concerning James H. Hampton other than to state to members of the staff of the Prosecuting Attorney's office that Southwestern Bell Telephone Company would assist the prosecuting attorney's office in the prosecution of James H. Hampton. . . ." After Umphres returned to St. Louis on May 5, 1969, he was kept informed by letter of the progress of the case. In the interim, Southwestern Bell requested and received

from the Missouri Highway Patrol a "rap sheet" on plaintiff. Shortly after September 17, 1970, Umphres received a copy of a letter from Prosecutor Gilmore to Sheriff Dennis concerning the disposition of the case against plaintiff. The copy Umphres received is identical to Exhibit C, attached to plaintiff's original complaint. Shortly after October 26, 1970, Umphres received check #365 in the amount of $575.75 from Sheriff Dennis and a letter, a copy of which has been labeled Exhibit D and attached to plaintiff's original complaint. The check was received by Umphres as an employee of Southwestern Bell and not in his individual capacity, and the check was duly remitted to Southwestern Bell and processed in the normal course of business.

Plaintiff has filed an affidavit in opposition to defendants' motions for summary judgment. Umphres is named only once in the affidavit and is there identified as an employee of Southwestern Bell Telephone Company. The only other statements in plaintiff's affidavit which could possibly relate to Umphres are the following: Plaintiff states that he was "subjected to repeated interrogations by officials . . . representing the Southwestern Bell Telephone Company. . . ." Plaintiff states that his arrest, incarceration and the subsequent interrogations were committed by ". . . employees of the Southwestern Bell Telephone Company. . . ." Plaintiff also states that his car was searched by a person or persons unknown to him, said persons representing ". . . Southwestern Bell Telephone Company. . . ." Finally, plaintiff states in his affidavit that his property of $1,216.90 was disposed of by the Prosecuting Attorney and Sheriff of Scott County pursuant to an agreement between Charles M. Shaw, attorney for plaintiff, "the aforementioned officials and the employees of the Southwestern Bell Telephone Company. . . ."

Rule 56(e), Federal Rules of Civil Procedure, provides in part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied).

■ Plaintiff's affidavit does not state facts showing that defendant Umphres personally committed any act. Umphres' affidavit shows that his only significant acts were to agree to assist the prosecution, the attempted interrogation of plaintiff, and the receipt of the check from Sheriff Dennis in behalf of Southwestern Bell. This court concludes that there is no genuine issue as to any material fact regarding the claim against defendant Umphres.

Defendant Umphres is entitled to judgment as a matter of law. First, there are no facts before this court from which it could be concluded that Umphres acted under color of state law. To the contrary, the facts show that Umphres acted at all times as the security agent for Southwestern Bell, a private corporation. There are no facts from which it might be concluded that Umphres conspired with persons who acted under color of state law. Umphres' statement that Southwestern Bell would assist in the prosecution of plaintiff is an insufficient basis for concluding that he conspired to deprive plaintiff of his rights. Second, there are no facts from which it could be concluded that Umphres "subject[ed] or caus[ed] to be subjected" plaintiff to a deprivation of any rights. 42 U.S.C. § 1983.

*Defendant Gilmore.*

Prosecutor Gilmore filed an affidavit in support of his motion for summary

judgment, which asserts the following facts: On May 4 and 5, 1969, Gilmore was not present in Scott County, Missouri, and all duties performed by the Prosecuting Attorney's office in relation to the filing of criminal charges against plaintiff and his wife were conducted by James E. Moore, III, who was at that time serving as Assistant Prosecuting Attorney for Scott County, Missouri. Gilmore did not question or attempt to question plaintiff or his wife with respect to the criminal charges filed against them or with respect to any other matter, nor did he authorize, direct or communicate with any other person or persons regarding the search of plaintiff and his wife or their automobile. The disposition of the money obtained from plaintiff's automobile "was made on the basis of authorization from Charles Shaw, Attorney at Law, Clayton, Missouri, who had entered his appearance and represented the defendants throughout the proceedings." Arthur Bruce, John Dennis, and T. Edward Umphres had no role in the reaching of the agreement with Charles Shaw, other than to be informed by Gilmore as to what was taking place from time to time. At no time did Gilmore receive any information from any person that Charles Shaw no longer represented plaintiff or did not have authority to enter into the agreement on behalf of his client.

Plaintiff's only averments in his affidavit in opposition to the motions for summary judgment which are in any way related to Gilmore are as follows: Plaintiff was subjected to repeated interrogations by ". . . persons from the Office of the Prosecuting Attorney of Scott County. . . ." The arrest, incarceration and interrogations were committed by "officers in the employ of the City of Sikeston, under the command of and at the direction of . . . agents or employees of the Office of the Prosecuting Attorney of Scott County." Plaintiff's automobile was searched by person or persons unknown to plaintiff, "said persons representing . . . the Office of the Prosecuting Attorney. . . ." The $1,216.90 was disposed of by the "Office of the Prosecuting Attorney of Scott County in conjunction with the Office of the Sheriff of Scott County pursuant to an agreement between Charles M. Shaw, attorney for this plaintiff, the aforementioned officials and the employees of Southwestern Bell Telephone Company. . . ."

Plaintiff's affidavit fails to state any facts disputing the facts averred in Gilmore's affidavit showing that he did not personally participate in any of the complained of acts, except the disposition of the money. Plaintiff apparently relies on the doctrine of respondeat superior to hold Gilmore liable for conduct in which he did not participate. The Eighth Circuit recently had occasion to consider the application of the doctrine of respondeat superior to § 1983 actions. Jennings v. Davis, 476 F.2d 1271 (1973). Jennings, the plaintiff in that case, alleged that she had been arrested for a speeding violation by a Kansas City, Missouri police officer and had been directed to report to the local police station. At the police station, she overheard two police officers ridiculing the behavior of traffic violators they had arrested and these remarks caused her to feel humiliated, frightened and intimidated. She inquired of the officers why they were not out arresting murderers and thieves who were committing crimes under their noses. She alleged that Noffke, a civilian clerk at the station, committed an assault and battery upon her and engaged in an unlawful search and seizure of her person. The suit was brought against the five members of the Board of Police Commissioners of Kansas City, the Chief of Police, the desk sergeant, and two patrolmen who were present when the alleged violation of her rights occurred. Jennings dismissed the suit without prejudice with respect to Noffke, but sought to

hold the other defendants liable under the doctrine of respondeat superior. The Eighth Circuit expressly rejected the application of the doctrine of respondeat superior on the set of facts before them, and stated:

"Appellants have not alleged any affirmative conduct so their claim against the appellees obviously is grounded upon nonfeasance. But no Board member or the Chief is alleged to have been present at this incident or to have had the duty, opportunity, or the ability to intervene in order to prevent Noffke's alleged unreasonable search and seizure of Mrs. Jennings." 476 at 1275.

■ In the instant case, as in *Jennings,* there is no allegation that Gilmore was present at any of the incidents or that he had the duty, opportunity, or ability to intervene in order to prevent the alleged deprivation of any of plaintiff's constitutional rights. This court concludes as a matter of law that, on the undisputed facts before it, Gilmore may not be held liable for any of the alleged deprivations of plaintiff's rights in respect of his arrest, incarceration, interrogation or the search of his automobile and seizure of his property.

■ There remains one possible basis for recovery against Gilmore: the disposition of the $1,216.90. The facts concerning Gilmore's participation in the disposition of the money are not disputed. Gilmore entered into an agreement, as Prosecuting Attorney for Scott County, with plaintiff's attorney, Charles M. Shaw, to dispose of the seized money first by paying all court costs arising from the charges against plaintiff and his wife, and second to distribute the balance to Southwestern Bell Telephone Company as restitution, and in conjunction therewith the charges against plaintiff and his wife were to be dismissed. It is apparent that Gilmore acted on the basis of an express representation by plaintiff's attorney that plaintiff and his wife had agreed to the proposed dis-

missal of the charges and the disposition of the money. *See* Exhibit B, attached to plaintiff's original complaint.

In Rhodes v. Houston, 202 F.Supp. 624 (D.Neb.1962), aff'd per curiam 309 F.2d 959 (8th Cir. 1962), cert. denied 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963), the district court said:

"[I]t also appears that these defendants [Attorney General, Assistant Attorney General, and Special Assistant Attorney General] are immune, since the complaint on its face sets forth that these defendants were acting in the capacity and under the authority of their various offices.

"The law is clear that state's attorneys and prosecuting attorneys are immune. . . . And it has been held that where the allegations of the complaint show that the acts charged against an assistant state's attorney were performed in the discharge of his official function and duties, then 'under the law as recognized in a long line of cases, such officials are immune to prosecution' of a civil rights suit. Peckham v. Scanlon, 241 F.2d 761, 763 (7th Cir., 1957)." 202 F.Supp. at 633–634.

Gilmore entered into an agreement to dispose of the money in his capacity as Prosecuting Attorney of Scott County, Missouri. In State v. Smith, 422 S.W.2d 50 (Mo. en banc 1967), the Missouri Supreme Court said of a Prosecuting Attorney's authority:

"In the exercise of his discretion, a prosecuting attorney has the right to choose a course of action or nonaction, as long as he does not act wilfully or in bad faith."
*Id.* at 66–67.

In connection with the exercise of his discretion to prosecute, a prosecuting attorney may be called upon to enter into an agreement with a defendant or his attorney for the resolution of matters collateral to the criminal charges, such as the payment of costs and the disposi-

tion of allegedly stolen personal property in the possession of law enforcement authorities. In this case, the disposition of the money was an integral part of the negotiated disposition of the charges against plaintiff. It does not strain a reasonable reading of the cases, supra, to conclude that defendant Gilmore was acting under the authority of and in his capacity as prosecuting attorney. Defendant Gilmore acted upon the representation of plaintiff's attorney of record that the disposition of the funds was in accordance with plaintiff's wishes. There are no facts before the court to show that Gilmore had any reason to believe otherwise. On these facts, this court concludes that defendant Gilmore is immune from suit for the disposition of the money.

Summary judgment will be entered in favor of defendant Gilmore.

*Defendant Dennis.*

The only allegations against Sheriff Dennis concern the disposition of the $1,216.90. Plaintiff states in his affidavit that the money was disposed of by "the Office of the Prosecuting Attorney of Scott County in conjunction with the Office of the Sheriff of Scott County pursuant to an agreement between Charles M. Shaw, attorney for this plaintiff, the aforementioned officials and the employees of Southwestern Bell. . . ." The affidavit of defendant Gilmore states that Sheriff Dennis "had no role in the reaching of the agreement with Charles Shaw, Attorney for James H. Hampton and Mary Frances Hampton, with regard to the disposition of monies taken from the 1968 automobile, other than to be informed by this affiant as to what was taking place from time to time." No opposing affidavit is to the contrary. The facts regarding Sheriff Dennis' participation in the distribution of the money are not disputed. Sheriff Dennis paid the court costs out of the allegedly stolen money and disbursed the balance to Southwestern Bell

in accordance with instructions from Prosecutor Gilmore.

 Having held that the prosecutor who actually negotiated disposition of the money and the criminal charges is immune from suit, it would be anomalous to hold liable the Sheriff who merely disbursed the money at the Prosecutor's direction and in accordance with the agreement. The Prosecuting Attorney is immune not because he is a prosecutor, but because he performs quasi-judicial functions in carrying out the duties of his office. *See* Rhodes v. Houston, *supra*, 202 F.Supp. at 633–634. Sheriff Dennis performed no more than the same quasi-judicial function by disbursing the money according to the Prosecutor's direction and in compliance with the agreement. This court concludes that on the facts before it, Sheriff Dennis is also immune from suit. *See* Rhodes v. Houston, *supra*.

*Defendant Bruce.*

The allegations against Police Chief Bruce are that plaintiff's arrest and interrogations "were committed by officers in the employ of the City of Sikeston, under the command of and at the direction of Arthur Bruce. . . ." It is also alleged that plaintiff's automobile was searched by "persons representing the Police Department of Sikeston. . . ."

 Police Chief Bruce has filed with his motion for summary judgment a copy of a complaint for a search warrant for plaintiff's automobile. Attached to the complaint for the search warrant is the affidavit of Bobby Norman, a Sikeston police officer. Norman's affidavit recites that while he was on duty on May 4, 1969, he was informed by two individuals that a man and a woman were seen attempting to break into the money box of a pay telephone located on East Malone Avenue, Sikeston, Missouri. The officer also obtained a description of the automobile and its license number. The officer

then checked the pay phone and ascertained that it had been broken into and the money box removed. Thereafter, he stopped an automobile fitting the description and bearing the license number he had previously been given and took into custody the occupants—plaintiff and his wife. In Pierson v. Ray, 386 U. S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that the defense of good faith and probable cause to arrest was available in an action under § 1983. Plaintiff avers in his affidavit in opposition to summary judgment that he stopped at a telephone booth to make a long-distance call and that upon finishing the call he and his wife proceeded in their automobile toward Highway 61. Plaintiff's affidavit does not contradict in any way the statements in the affidavit of Norman as to what he was told. The facts known to Officer Norman provided probable cause for the arrest of plaintiff. There are no facts before the court which suggest that the arrest of plaintiff was made for any reasons other than probable cause to believe that plaintiff had broken into the money box of the pay telephone. Therefore, this court concludes that on the claim for illegal arrest Police Chief Dennis is entitled to judgment as a matter of law. *See* Giordano v. Lee, *supra*, at 1230 of 434 F.2d.

 Plaintiff also complains of the allegedly illegal search of his automobile. Plaintiff does not state in his amended complaint or in his affidavit any facts showing that Police Chief Bruce participated in that search, except the remark that all of the property "was seized by one or more of the defendants." Attached to Police Chief Bruce's motion for summary judgment is a copy of a warrant to search plaintiff's automobile. The warrant commands the Sheriff of Scott County to search plaintiff's automobile. In Rhodes v. Houston, *supra*, the court said:

"Nonetheless, authorities performing orders issuing from a court are provided immunity when they do nothing other than perform such orders. [Citations omitted]" 202 F.Supp. at 636.

The search of plaintiff's automobile was made pursuant to a court order. Therefore, Police Chief Bruce cannot be held liable for the search. It should also be noted that the affidavits attached to the complaint for the warrant unquestionably provided probable cause for the search.

 Plaintiff also complained of alleged repeated interrogations at a time when he and his wife were being held in the Sikeston City Jail "without benefit of counsel" and "without benefit of any warning of this plaintiff's rights pursuant to the Miranda Decision." The statement in plaintiff's affidavit and in his amended complaint that he was held "without benefit of counsel" does not state a claim. The Sixth Amendment assures the accused the right to counsel. But plaintiff does not allege in his complaint or state facts in his affidavit which show that he was *denied* the assistance of counsel. The mere fact that plaintiff was incarcerated and counsel was not gratuitously provided does not show that plaintiff was denied his right to the assistance of counsel.[1]

---

1. Defendant Gilmore states in his affidavit:
 "That through conversations with the Assistant Prosecuting Attorney of Scott County, Missouri, and with Attorney Kenneth L. Dement, he knows of his own knowledge that Attorney Kenneth L. Dement undertook the defense of James H. Hampton and Mary Frances Hampton, his wife, on or about May 4,

1969, and that said James H. Hampton and Mary Frances Hampton, his wife, refused to make statements to Police Officers, advising them that it would be necessary for them to discuss the matter with his attorney."

In addition, the affidavit of defendant Umphres avers that when Umphres attempted to interview plaintiff in the jail, plaintiff immediately informed him that

Plaintiff's allegations that he was not informed of his Miranda rights and was subjected to repeated interrogations may be considered together. The Constitution of the United Staes nowhere provides that an individual has the *right* to be *warned* of his constitutional rights or has the right not to be interrogated while incarcerated on criminal charges. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966) held that unless an individual is warned of his right not to incriminate himself and of his right to counsel, statements obtained from the accused are inadmissible at his trial. In Ambrek v. Clark, 287 F.Supp. 208, 210 (E.D.Pa.1968), the court said:

> "The sole import for failure to so warn is to preclude the admissibility in a subsequent criminal proceeding of evidence and statements obtained from the accused: * * *
>
> "Consequently, unless evidence so obtained were used against the plaintiff in a criminal proceeding, there has been no deprivation of any rights, privileges or immunities secured by the Constitution or laws of the United States, which is a requisite for stating a cause of action under the Civil Rights Acts."
>
> *See also*, Duncan v. Nelson, 466 F.2d 939, 944 (7th Cir. 1972), cert. denied 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152 (1972) and cases cited therein.

For the foregoing reasons, this court concludes that Police Chief Bruce is entitled to judgment as a matter of law.

The plaintiff is free to pursue a civil action for conversion of his property in another court having jurisdiction to hear the claim. What is held here is that the mere claim against a state official for wrongful disposition of property does not rise to constitutional dimensions, affording a federal civil rights violation, absent facts showing such acts were done wrongfully under color of state law by one acting outside his capacity and authority.

Summary judgment will be entered for all defendants.

So ordered.

---

he should not question him and that he knew and had been informed of his rights not to talk and that any contact he desired would have to be made through his attorney.