Albert ZARAGOZA

v.

CITY OF SAN ANTONIO, TEXAS, Lila Cockrell, Individually and in her official capacity as Mayor of the City of San Antonio, Texas, Joe Alderete, Jr., Henry Cisneros, Helen Dutmer, Bernardo Eureste, Glen Hartman, Rudy C. Ortiz, Phil Pyndus, John Steen, Joe Webb, Frank D. Wing, Individually and in their official capacities as members of the City Council of the City of San Antonio, Texas, and Harold Fiske, Individually and in his official capacity as Police Officer of the City of San Antonio, Texas, et al.

No. SA–78–CA–139.

United States District Court,
W. D. Texas,
San Antonio Division.

Jan. 15, 1979.

James F. Pons, San Antonio, Tex., for plaintiff.

Edgar A. Pfeil, Jack Paul Leon, Mayo Galindo, Sparta Bitsis, Legal Tax Div., San Antonio, Tex., for defendants.

## MEMORANDUM OPINION

JOHN H. WOOD, Jr., District Judge.

Plaintiff brings this suit pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 28 U.S.C. § 1343 alleging personal injuries from police brutality. The defendants filed a Motion to Dismiss on behalf of the defendants, City of San Antonio, Lila Cockrell, Individually and in her official capacity as Mayor of the City of San Antonio, Texas, and Joe Alderete, Jr., Henry Cisneros, Helen Dutmer, Bernardo Eureste, Glen Hartman, Rudy C. Ortiz, Phil Pyndus, John Steen, Joe Webb, Frank D. Wing, Individually and in their official capacities as Members of the City Council of the City of San Antonio, Texas; and Emil Peters, Individually and in his official capacity as Chief of Police of the San Antonio Police Department, in the above captioned cause. Until recently, it was settled law that a municipal corporation was not a person within the meaning of 42 U.S.C. §§ 1981, 1983, 1985 or 28 U.S.C. § 1343 and enjoyed absolute immunity from such so called Section 1983 civil rights suits. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960); *Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). See *Hoffman v. United States Department of Housing and Urban Development*, 519 F.2d 1160 (5th Cir., 1975); *Broad-*

*way v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir., 1976).

The Supreme Court in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) expressly reversed these cases in the following language:

> Local governing bodies, therefore, can be sued directly under Sec. 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

In this case, the Supreme Court granted certiorari to consider:

> . . . whether local governmental officials and/or local independent school boards are "person" within the meaning of 42 U.S.C. § 1983 when equitable relief in the nature of back pay is sought against them in their official capacities? Pet. for Cert. 8. 436 U.S. 662, 98 S.Ct. 2021.

The point in issue in the *Monell* case involved an official "policy" of an agency of the City of New York. The policy in question was that of compelling pregnant employees to take unpaid leaves of absence before such were required for medical reasons. Cf. *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52; 436 U.S. at 660–662, 98 S.Ct. 2018.

It was within this setting that the Supreme Court undertook a review of the legislative history of the Civil Rights Act of 1871 and concluded that municipalities and other local governing bodies could be sued directly under 42 U.S.C. § 1983 where, as in the *Monell* case, the action alleged to be unconstitutional, implemented or executed a "policy statement, ordinance, regulation or decision *officially* adopted and promulgated by that body's officers" or where the alleged constitutional deprivation was vested "pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels".

The majority in the case of *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) reviewed the leading cases on executive immunity, *Barr v. Matteo,* 360 U.S. 654, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), and found nothing there to contradict its views. Neither of those cases involved an alleged constitutional violation, Mr. Justice White pointed out.

Moreover, state executive officers are not absolutely immune from suit for violations of 42 U.S.C. § 1983, the majority noted. "Surely, federal officials should enjoy no greater zone of protection when they violate federal constitutional rules than do state officers." *Butz v. Economou,* 98 S.Ct. 2908. The immunity in either case should be the same—the qualified good-faith and reasonable-belief immunity recognized in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "We therefore hold that, in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer,* subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Butz v. Economou,* 98 S.Ct. 2911. The majority did recognize absolute immunity for agency officials in the performance of adjudicatory and prosecutorial functions.

In the *Monell* case that Mr. Justice Brennan pointed out, by 1871 it was well understood that corporations should be treated *"AS NATURAL PERSONS"* for virtually all purposes of constitutional and statutory analysis and, of course, this would apply to municipal corporations. (Emphasis added.) Only two years before the debates on the Civil Rights Act, this principle had "automatically and without discussion" been extended to municipal corporations. *Cowles v. Mercer County,* 7 Wall. 118, 19 L.Ed. 86 (1869). "Under this doctrine, municipal corporations were routinely sued in the federal courts, and this fact was well known to Congress" when it enacted this legislation.

In a foot note, the majority emphasized that there is no constitutional impediment to municipal liability and pointed out that its holding was limited to local government units, which are not considered part of the state for Eleventh Amendment purposes.

The majority also concluded that the same legislative history indicates that Congress did not intend municipalities to be liable unless some action pursuant to an official municipal policy caused the constitutional tort. "In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeaser—or, in other words, a municipality cannot be held liable under Section 1983 on a respondeat superior theory."

Section 1983 of 42 U.S.C., as adopted by Congress, provides:

(A)ny person who, under color of any law, statute, ordinance, regulation, custom, or usage of any state, *shall subject, or cause to be subjected*, any person . . to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proceedings for redress . .

■ The language plainly imposed liability on a government that, under color of official policy, "causes" an employee to violate another's constitutional rights, and when the Supreme Court in the *Monell* case, 98 S.Ct. at page 2022 made the statement, "We now overrule *Monroe v. Pape*, supra, insofar as it holds that local governments are *wholly* immune from suits under 1983", it was referring only to "official" action and did not open the door to all situations in which a hypothetical action could arise. In point of fact, the Court expressly limited its decisions to "execution of government's policy or custom".

The majority in *Monell* added that "we have no occasion to address, and do not address, what the full contours of municipal liability under Sec. 1983 may be. We have attempted only to sketch so much of the Sec. 1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases and we expressly leave further development of this action to another day."

■ This Court is mindful of the recent Opinion of Judge William Stafford of the Northern District of Florida in *Arledge v. Turlington*, (U.S.D.C., N.Fla., Nov. 11, 1978), 24 Cr.L. 13, which I feel overdevelops this "action" to an extreme not contemplated by *Monell* and goes so far as to hold that a "State is a person within the meaning of 42 U.S.C. § 1983 and that in such an action the Eleventh Amendment is not a bar to a damage award payable from the State Treasury." Judge Stafford interprets the legislative history reviewed in *Monell* to apply fully to States as well as to Municipal Governments.

. . . The legislative history of *Monell* necessitates the conclusion that Congress intended no differentiation between States and Municipalities. 24 Cr.L. 13.

While I have the highest personal affection, respect and admiration for Judge Stafford, I disagree with his holding in this case.

This Court believes the correct Opinion is expressed in *Bogard v. Cook*, 586 F.2d 399 (5th Cir., 1978). In *Bogard*, the Court of Appeals at 410 stated:

The plaintiff contends that the recent Supreme Court decision in *Monell v. Soc. Serv. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), has abrogated the state's eleventh amendment immunity when it is sued pursuant to 42 U.S.C., Sec. 1983. Nothing in *Monell*, however, goes that far. The Supreme Court explicitly noted that its *Monell* holding was "limited to local government units which are not considered part of the state for eleventh amendment purposes." 98 S.Ct. at 2035–36 n. 54. See Also *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 2580–81, 57 L.Ed.2d 522 (1978) (Brennan, J., concurring).

Plaintiff further contends that defendants are liable to the plaintiff under a per-

sonal injury tort theory of Respondeat Superior. While it appears to the Court from a careful review of the pleadings that plaintiff in this case has failed to allege any causal connection between any action on the part of the defendants and the alleged deprivation of plaintiff's constitutional rights, the *Monell* case states clearly that such a theory is not available to the plaintiff even if sufficient facts were alleged. The majority in *Monell* held that the legislative history discussed in the Opinion demonstrated that Congress did not intend municipalities to be held liable unless there was some action pursuant to an official municipal "policy" that caused the constitutional tort.

In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Sec. 1983 on a *respondeat superior* theory. Id. 98 S.Ct. at 2036.

*Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed. 561 (1976) is in point. The Supreme Court held that the nonfeasance of a high managerial official is not a sufficient basis for assessing damages or granting injunctive relief against that official. "There is a necessity of showing an actual involvement of the official in the actions upon which the action under 42 U.S.C., Section 1983, is based." (See also *Recommended Procedures for Handling Prisoner Civil Rights Cases*—Tentative Report No. 2, 1977, by the Federal Judicial Center's Committee on Prisoner Civil Rights (Aldisert Committee) at Page 23.

The Court would further point out that presently one out of seven cases filed in Federal Court throughout the country was instituted by a prisoner seeking some relief from the terms and conditions of his confinement. The Prisoner Civil Rights Committee of the Federal Judicial Center has established that the explosion of prisoner litigation and particularly that alleging Civil Rights violations under Section 1983 during the past ten years, has placed a tremendous burden on the Federal Courts. This Court respectfully submits that to errone-

ously open the door of the Courthouse (like "Pandora's box") to this type of action not mandated by Congress or the *Monell* decision would inundate the Federal Courts with a monumental flood of additional litigation under this section.

 The Court on a thorough review of the instant Complaint which complains of acts of police brutality and injuries proximately resulting therefrom as the basis for recovery against the defendants herein cannot find it there alleged, nor is it reasonable to presume that such alleged injuries resulted from an "official policy" of the City of San Antonio. Therefore, this Court finds under the holding in the *Monell* case and *Rizzo v. Goode*, supra, as well as for the reasons stated above, that this action as to the above named individuals in both their official and individual capacities, must be DISMISSED.