**Samuel J. DUNKIN, Plaintiff,**

v.

**Sheriff Ralph LAMB; Rex Bell, Jr.; Officer Callahan; The Metropolitan Police Department, a Public Entity, Defendants.**

**Civ. No. LV 79–2 RDF.**

United States District Court, D. Nev.

Oct. 30, 1980.

William F. Hess, Las Vegas, Nev., for plaintiff.

Vargas & Bartlett, Las Vegas, Nev., for defendants.

## ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROGER D. FOLEY, District Judge.

The defendants have moved this Court for a summary judgment as to each defend-

ant pursuant to Rule 56, Federal Rules of Civil Procedure, on the ground that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. In his amended complaint, plaintiff alleges that the actions and inactions of the defendants deprived him of his civil rights in violation of Title 42, U.S.C., § 1983. He claims his constitutional rights were violated on three separate occasions.

The first incident occurred on March 13, 1978, when two bondsmen (unnamed in this action) took physical custody of the plaintiff, who was their principal, and removed him to California. Plaintiff alleges that the defendants unlawfully took possession of him, then later released him and allowed the bondsmen to use unlawful force against him when they seized him. The second series of incidents allegedly occurred between November 30, 1978, and February 3, 1979, when the plaintiff was arrested in Las Vegas on a fugitive warrant from California. Plaintiff claims that during this time period he: (1) was threatened and encouraged to waive an extradition hearing, (2) was not advised of his rights, and (3) was denied his right to counsel, all in violation of his civil rights. Finally, plaintiff asserts that his civil rights were violated because he was not arraigned for thirteen days after his initial incarceration on the fugitive warrant.

Neither party has requested oral argument. Because of the complex factual setting, this motion is best dealt with by dividing the case into three categories. These categories are: (1) the named defendants Sheriff Lamb, the Metropolitan Police Department, a public entity, and Officer Callahan; (2) the alleged violations of plaintiff's procedural rights; and (3) the incident involving plaintiff's seizure by the bondsmen in the presence of Undersheriff Rex Bell, Jr., and other Metro officers.

1. *Sheriff Ralph Lamb.*

■ In response to the defendants' Interrogatory No. 33 in which he was asked how Sheriff Lamb participated in the incident described in the complaint, plaintiff said, "Sheriff Ralph Lamb responsible through agency theory and affect." Thus, it is clear that plaintiff is trying to hold Sheriff Lamb vicariously liable because of the actions of his subordinate officers. Such a claim is not cognizable in a § 1983 action in this Court. See *Hesselgesser v. Reilly*, 440 F.2d 901 (9th Cir. 1971); *Schulz v. Lamb*, 504 F.2d 1009 (9th Cir. 1974); *Baker v. McCarthy*, et al., Civil LV 79–140 RDF (April 16, 1980). Therefore, the motion for summary judgment as to Sheriff Lamb must be, and hereby is, granted.

2. *The Metropolitan Police Department, a Public Entity (METRO).*

■ In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that Congress did not intend to impose § 1983 liability upon local governmental bodies unless there was some action pursuant to an official policy that caused the constitutional tort. Plaintiff has failed to allege that his constitutional rights were violated by any official or unofficial policy or custom of METRO. Therefore, the motion for summary judgment as to METRO must be, and hereby is, granted. See *Zaragoza v. City of San Antonio*, 464 F.Supp. 1163 (W.D.Tex.1979).

3. *Officer Callahan.*

■ In paragraph VI of the amended complaint, plaintiff alleges that he was threatened while in custody by Officer Callahan to sign an extradition waiver. However, in plaintiff's deposition at pages 120–21, he admitted that all Officer Callahan did was inform him that if he did not sign the waiver, it would take forty days to obtain a "Governor's warrant" to extradite him. Thus, Officer Callahan was merely stating that plaintiff would be taken to California sooner or later. Plaintiff has clearly failed to state a claim against Officer Callahan. Therefore, the motion for summary judgment as to Officer Callahan must be, and hereby is, granted.

■ Because plaintiff does not know who the responsible persons may be, he has

plead that certain unnamed defendants deprived him of various procedural rights. This Court may determine whether his allegations are sufficient to trigger § 1983 liability even though the proper defendants remain unnamed.

### 4. Right to an Attorney at Extradition Hearings.

■ As part of his action, plaintiff alleges that his civil rights were violated because he did not receive appointed counsel to represent him during the various extradition proceedings. However, because extradition is not a critical stage of the criminal proceedings, there is no constitutional right to an attorney. Instead, such a right is statutory, and the Nevada statute does not require appointment of counsel at extradition hearings. *Roberts v. Hocker*, 85 Nev. 390, 456 P.2d 425 (1969). Therefore, to the extent that plaintiff attempts to impose § 1983 liability for the failure to appoint an attorney for him, the motion for summary judgment must be, and hereby is, granted.

### 5. Failure to Give Miranda Warnings.

■ It is well–settled that a failure to give the *Miranda* warnings does not give rise to an action cognizable under § 1983. *Bennett v. Passic*, 545 F.2d 1260 (10th Cir. 1976); *Hampton v. Gilmore*, 60 F.R.D. 71 (E.D.Mo.1973), aff'd, 486 F.2d 1407 (8th Cir. 1973). Therefore, to the extent plaintiff attempts to impose § 1983 liability because he was not given his *Miranda* rights, the motion for summary judgment must be, and hereby is, granted.

### 6. Delay in Arraignment.

Section 171.178(1) of the Nevada Revised Statutes provides that an arrestee be taken before a magistrate "without unnecessary delay." After his arrest on the fugitive warrant on November 30, 1978, plaintiff was held in the Clark County jail for thirteen days before he was arraigned. Plaintiff claims that this delay in his arraignment gave rise to a claim cognizable under § 1983.

■ Mere delay in arraignment alone does not amount to a deprivation of constitutional rights. Instead, some prejudice to the defendant must exist before a delay in arraignment violates constitutional rights. Thus, if there is no confession, incriminating statements or interrogation occurring during the delay, the defendant's rights are not violated. *Morgan v. Sheriff*, 92 Nev. 544, 554 P.2d 733 (1976). See also *United States v. Bandy*, 421 F.2d 646 (8th Cir. 1970). Plaintiff has not alleged that he was prejudiced by the delay in his arraignment. Therefore, the motion for summary judgment must be, and hereby is, granted to the extent that plaintiff is attempting to impose § 1983 liability upon his delay in being arraigned.

## DISCUSSION

If plaintiff has a viable § 1983 cause of action, it is because of his allegations that Undersheriff Rex Bell, Jr., and several other unknown METRO personnel stood by and allowed plaintiff to be beaten by the two bondsmen when they took physical custody of him. Since defendants have moved for summary judgment, the facts of this incident must be viewed in the light most favorable to plaintiff. What follows is a brief summary of those facts as distilled from plaintiff's deposition.

Sometime in 1976, plaintiff was arrested in California for "capping," which is the sending of potential clients to a particular bondsman in exchange for compensation from that bondsman. He was bailed out by Sandoval Bail Bonds, a company for which he had done some "capping." Thereafter, plaintiff moved to Nevada, but he returned to California to appear on the "capping" charge. At that time, he claims the prosecutor told him the charge was being reduced and that he could go back to Nevada. In reliance upon that statement, plaintiff returned to Nevada thinking that everything was resolved.

On March 13, 1978, plaintiff was sitting in the Clark County Law Library reading a book when two Sandoval bondsmen, whom plaintiff recognized, approached him and

told him that they were taking him back to California because he had failed to appear. A loud argument ensued. A METRO officer then approached the bondsmen and told them they were not taking plaintiff anywhere. The officer then asked plaintiff if he would go upstairs to see Undersheriff Bell. Plaintiff agreed, and all four men trooped up to Mr. Bell's office on the third floor of the county building. The two bondsmen were ordered to stay in the hallway while plaintiff and the officer entered an office. For quite awhile thereafter, Undersheriff Bell and several other officers unknown to plaintiff talked to him and tried to determine what was going on. Plaintiff claims that at no time did any of the METRO personnel request some form of evidence from the bondsmen that they were within their rights to seize plaintiff.

Ultimately, the METRO personnel decided that they would not interfere with the bondsmen and told plaintiff that he was on his own. At that point, plaintiff stepped into the hallway and was allegedly beaten by the bondsmen as they handcuffed him. Plaintiff claims that he cried out for help and protection but that the METRO officers simply stood by and allowed the bondsmen to take him away.

Plaintiff claims that the failure of Undersheriff Bell and the other unknown METRO officers to prevent the use of excessive force by the bondsmen violated his civil rights so as to give rise to a § 1983 action. But, instead of explaining how such inaction gives rise to a § 1983 action, plaintiff's brief in opposition to summary judgment merely asserts a general negligence theory. Thus, this Court is inclined to grant the defendants' motion for summary judgment. See *Ouzts v. Maryland National Insurance Co.*, 505 F.2d 547, 550–51 (9th Cir. 1974). But, it should be noted that plaintiff proceeded in pro per until some time after he filed his amended complaint. In such a situation the liberal policy behind the civil rights statutes would best be served if this Court stayed its ruling until the plaintiff submits a more adequate memorandum of points and authorities in opposition to the motion for summary judgment. This course of action is particularly appropriate in this case because the March 13th incident is troublesome to this Court.

Therefore, it is hereby ordered that this Court's ruling on the defendants' motion for summary judgment, as it pertains to the March 13, 1978, incident, is stayed until such time as the plaintiff files additional points and authorities in opposition to the motion. Plaintiff shall have thirty days from the filing of this order to file and serve said points and authorities. Thereafter, defendants may have ten days within which to file and serve a reply, if they so desire.