Howard Smith BENNETT,
Plaintiff-Appellant,

v.

Albert PASSIC, Sheriff, etc., et al.,
Defendants-Appellees.

No. 75–1363.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 22, 1976.

Decided Sept. 29, 1976.

the United States District Court for the District of Utah seeking relief for alleged violations of the Civil Rights Act. He also submitted an affidavit of poverty and a motion for leave to proceed in forma pauperis. The district court denied Bennett's motion to proceed in forma pauperis on the ground that the action was frivolous.

The procedures to be followed in complying with 28 U.S.C. § 1915 were laid down by this court in *Ragan v. Cox*, 305 F.2d 58 (10th Cir. 1962) where we stated

> When a district court receives an application for leave to proceed in forma pauperis, it should examine the papers and determine if the requirements of § 1915(a) are satisfied. If they are, leave should be granted. Thereafter, if the court finds that the allegations of poverty are untrue or that the action is frivolous or malicious, it may dismiss the case but in so doing it should clearly state the grounds for such action. 305 F.2d at 60.

While the procedure employed by the district court in this case was not in conformity with the procedure prescribed in *Ragan*, there was the kind of substantial compliance with the *Ragan* procedure which we found adequate in *Harbolt v. Alldredge*, 464 F.2d 1243 (10th Cir. 1972) and in *Oughton v. United States*, 310 F.2d 803 (10th Cir. 1962). Here, as in *Harbolt* and *Oughton*, the district court preserved the complaint, as if it had been filed, examined it, and entered a written order detailing the reasons for finding the complaint frivolous and denied the motion to proceed in forma pauperis. Therefore, as in *Harbolt* and *Oughton*, we will treat the action as if it had been filed and subsequently dismissed as frivolous.

We have held that the test for frivolousness is whether the plaintiff can make a rational argument on the law or facts in support of his claim. *Harbolt v. Alldredge*, 464 F.2d 1243, 1245 (10th Cir. 1972); *Durham v. United States*, 400 F.2d 879, 880 (10th Cir. 1968); *Tidmore v. Taylor*, 323

---

Howard Smith Bennett, pro se.

Vernon B. Romney, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, Utah, for defendants-appellees.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief Judge.*

MORRIS, Chief Judge.

In this action Howard Smith Bennett is appealing the district court's denial of his motion to proceed in forma pauperis in an action brought pursuant to 42 U.S.C. § 1983. Bennett submitted a complaint to

* Of the United States District Court for the Eastern District of Oklahoma.

F.2d 88, 90 (10th Cir. 1963); *Ragan v. Cox*, 305 F.2d 58, 59 (10th Cir. 1962). Here, the district court, while it did not specifically apply this test to Bennett's claims, did find that the allegations in the complaint are vague and conclusory, do not constitute violations of any federally protected rights, and fail to state a claim upon which relief can be granted.

Bennett's claims and theories for recovery are obscure and in some instances unintelligible. The defendants are six in number and include the Sheriff and three Deputy Sheriffs of Carbon County, Utah, one state highway patrolman and one city policeman of Price, Utah. Plaintiff seeks injunctive relief, compensatory damages in the amount of $230,000 and punitive damages in the amount of $60,000. The complaint, read in the light most favorable to Bennett, seems to assert the following claims for relief:

1. Bennett was arrested and incarcerated in the drunk tank of the city jail without being informed of the charges against him.

2. He was kept in the drunk tank for a period of one to three hours. The drunk tank consists of "a cell approximately ten by ten feet, with a wooden bench on the north and east sides of it, it has a commode located on the left side as you enter into it and the drunk tank consistently smells of vomit and urine and it is maintained in such filthy and unsanitary conditions so as to create a shocking and debased atmosphere and set of surroundings." (Complaint, p. 3). Bennett's confinement in the drunk tank was cruel and unusual punishment.

3. Bennett was not warned of his *Miranda* rights prior to a custodial interrogation. Such interrogation occurred when Deputy Sheriff Adams discovered the other inmate of the drunk tank dead in a pool of blood one hour after Bennett's incarceration. Without warning Bennett of his rights against self-incrimination, Adams queried Bennett, who, according to Adams' testimony, replied "I killed the son-of-a-bitch because he wouldn't shut up." (Complaint, p. 4).

4. Adams and other police officers testified at Bennett's trial, recounting this episode. Such evidence was tainted by the failure to advise Bennett of his rights.

5. Two days after Bennett's arrest, while he was incarcerated and before he obtained counsel, Deputy Sheriff, Frank World, told Bennett, while he was serving Bennett's lunch, "you don't need a lawyer why don't you just plead guilty you are guilty anyway." (Complaint, p. 7).

6. "[C]ertain items of clothing were destroyed, thrown away or deliberately misplaced so that they would not be used in evidence at Plaintiff's trial." (Complaint, p. 7). Apparently it is Bennett's allegation that this was accomplished by members of the Sheriff's Department.

7. Appellees, by their negligence in denying Bennett his fourth, fifth, and fourteenth amendment rights, caused the murder of which Bennett was convicted.

8. By reason of these acts and omissions Bennett has been denied his rights under the fourth, fifth, sixth, eighth and fourteenth amendments.

It should be noted that this is a civil rights action, not a petition for habeas corpus relief. To the extent that Bennett's claims challenge the propriety of his conviction, the claims are not now before the court. In this proceeding the court is concerned only with ascertaining whether Bennett's claims for relief under the Civil Rights Act are frivolous.

 With respect to the first claim the court notes that whatever constitutional rights Bennett may have to know the charges upon which he has been arrested, these rights were not infringed by a delay of some twelve hours between his 10:30 p. m. incarceration (Complaint, p. 3) in the drunk tank and his arraignment "the following morning" (Complaint, p. 4) for a murder committed in the drunk tank. Further, Bennett does not allege any injury or damage resulting from the delay; he does not allege that any of the defendants personally participated in or caused the delay. Personal participation is an essential allega-

tion in a § 1983 claim. *Battle v. Lawson*, 352 F.Supp. 156 (W.D.Okl.1972); *Campbell v. Anderson*, 335 F.Supp. 483 (D.Del.1971); *Christian v. Anderson* (unpublished, 10th Cir. 1974) Case No. 74–1213; *Ellerman v. McCracken* (unpublished, 10th Cir. 1974) Case No. 74–1258. He does not allege that he was physically abused during this period. Nor does he allege that the arrest was without probable cause. No rational argument can be made in support of this claim.

■ Bennett also alleges that the drunk tank "is a cell approximately ten by ten feet, with a wooden bench on the north and east sides of it, it has a commode located on the left side as you enter into it and the drunk tank cell consistently smells of vomit and urine and it is maintained in such filthy and unsanitary conditions so as to create a shocking and debased atmosphere and set of surroundings." (Complaint, p. 3). Bennett asserts that he was placed in the drunk tank at about 10:30 p. m. and removed from it shortly after 11:30 p. m. According to the portions of the trial transcript set forth by Bennett in his complaint, he was held in the drunk tank approximately three hours. In any event, whether the period was one or three hours, confinement for such a period, under such conditions, in a place designated as a drunk tank, and at a time when it is undisputed that Bennett was in fact intoxicated, does not constitute cruel and unusual punishment, as that term has been defined. The circumstances of confinement alleged here are not "of such character as to shock the general conscience or to be intolerable to fundamental fairness to the extent that the constitutional right to be free from cruel and unusual punishment [was] violated," a standard embraced by this court as "expressive of modern concepts of humane treatment in our social order." *Bethea v. Crouse*, 417 F.2d 504, 507 (10th Cir. 1969). Nor do they amount to "a clear abuse or caprice, resulting in an infringement of constitutional rights." *Dearman v. Woodson*, 429 F.2d 1288, 1290 (10th Cir. 1970). Nor do they approach those circumstances described in *Gregory v. Wyse*, 512 F.2d 378 (10th Cir. 1975) and by other federal courts in *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971); *Ford v. Board of Managers of New Jersey State Prison*, 407 F.2d 937 (3rd Cir. 1969); *Carey v. Settle*, 351 F.2d 483 (8th Cir. 1965); *Cassidy v. Edwards*, 392 F.Supp. 337 (W.D. Va.1975); and *Rodgers v. Westbrook*, 362 F.Supp. 353 (E.D.Mo.1973), which held that they did not constitute cruel and unusual punishment. No rational argument can be made in support of Bennett's claim that the circumstances alleged here amounted to cruel and unusual punishment.

■ With respect to Bennett's claim that he was denied his rights under the fifth amendment, the court notes again that this is not a habeas corpus petition and therefore the propriety of the questioning of Bennett or of admitting into evidence his responses is not before this court. Here Bennett claims that he is entitled to damages from certain of the appellees because they failed to warn him of his fifth amendment rights and testified about statements he made during interrogation. Even assuming that Bennett's confession should have been excluded from the evidence at his trial, the court cannot find that any rational argument can be made in support of this civil rights claim for damages. The Constitution and laws of the United States do not guarantee Bennett the right to *Miranda* warnings. They only guarantee him the right to be free from self-incrimination. The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act. *Hampton v. Gilmore*, 60 F.R.D. 71 (E.D.Mo. 1973), aff'd 486 F.2d 1407 (8th Cir. 1973).

■ With respect to Bennett's claim that the defendants are liable in damages for testimony given by them in his murder

trial, the court notes that witnesses who testify at trial are not acting under color of state law. *Stambler v. Dillon,* 302 F.Supp. 1250 (S.D.N.Y.1969); *Pritt v. Johnson,* 264 F.Supp. 167 (M.D.Pa.1967); *Smith v. Jennings,* 148 F.Supp. 641 (W.D.Mich.1957). The trial judge and the trial judge alone had the duty and power to determine what portions of the witnesses' testimony should be admitted or excluded; thus none of these defendants in testifying could have violated plaintiff's civil rights and any claim that they did so by virtue of their testimony is frivolous.

■ With respect to Bennett's allegation that the Chief Deputy Sheriff told him that he did not need a lawyer and should plead guilty, we note that there is no allegation that any constitutional deprivation resulted from this conversation. Bennett does not allege that he was in fact denied counsel (and the excerpts from the trial transcript included in the complaint indicate otherwise) and Bennett does not allege that he in fact pleaded guilty (indeed the complaint indicates that Bennett went to trial and was convicted).

■ With respect to Bennett's claim that certain items of clothing disappeared, the court notes that Bennett fails to allege that the clothing was his, that any one of the defendants caused the disappearance, that the clothing would in fact have been introduced into evidence on his behalf, or that his inability to introduce it contributed to his conviction, that the items of clothing were improperly seized from him, or that he is entitled to compensation for the loss of the clothing. The claim is frivolous.

■ Bennett's claim that these defendants caused the crime of which he was convicted clearly does not suggest that he was deprived of any right protected by the Constitution or laws of the United States and is obviously frivolous. Further, with respect to Bennett's concluding claim that he has been deprived of his rights under the fourth, fifth, sixth, eighth, and fourteenth amendments, Bennett asserts that this claim is based on the acts or omissions previously discussed. Thus, it too is frivolous for the reasons already stated.

While the procedures outlined in *Ragan* should be followed with respect to motions to proceed in forma pauperis, the requirements set forth there were substantially complied with here. We have considered the matter as though the motion to proceed in forma pauperis had been granted and the case then dismissed because it was found to be frivolous. We are satisfied that no rational argument on the law or the facts could be made in support of Bennett's claims, and that all of his claims are frivolous.

AFFIRMED.