951 F.2d 1260
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David SACK, Plaintiff-Appellant,
v.
Jim LOWDER; James Hiesley; Oklahoma Highway Patrol;
Wagoner county, Oklahoma; Elmer Shepherd, Sheriff of
Wagoner County, Oklahoma; Tommy Taylor, Unnamed Unknown
Oklahoma Highway Patrolman; Unknown Officer, Defendants-Appellees.
 Nos. 91-7082, 91-7111.
 United States Court of Appeals, Tenth Circuit.
 Jan. 6, 1992.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Sack appeals the dismissal of his pro se § 1983 complaint.
 
 
 3
 Mr. Sack was involved in an automobile accident that resulted in a fatality. He subsequently pleaded guilty to murder in the second degree and knowingly possessing an Oklahoma driver's license with a photograph of a person other than the named person.
 
 
 4
 This civil rights suit emanates from the happenings following the accident. Mr. Sack was arrested for DUI, exceeding the speed limit, open container violation, and driving under suspension. Generally speaking, his suit complains of the treatment afforded him while confined in a hospital, while being transported, and while incarcerated in the county jail.
 
 
 5
 Defendants filed motions to dismiss the complaint as against all defendants for lack of specificity to support the allegations of a constitutional violation or an action under color of law. Defendants also claimed qualified immunity and asserted other defenses.
 
 
 6
 The district judge granted defendants' motion to dismiss, explaining his rationale in two commendably thorough orders. The district court denied Mr. Sack leave to proceed with the appeal in forma pauperis.
 
 
 7
 Mr. Sack appeals this dismissal pro se. He asserts: (1) He should be allowed to amend his complaint as he was innocent of the crimes to which he pleaded guilty; and (2) there existed a conspiracy to convict him. Mr. Sack presents numerous exhibits that he contends prove his innocence as well as support his civil rights claim. The general thrust of his appeal to us is that defendants conspired to wrongfully convict him.
 
 
 8
 We grant Mr. Sack permission to proceed with his appeal in forma pauperis. Having done so, we AFFIRM the judgment of the district court for substantially the same reasons set forth in its orders of June 10, 1991, and September 17, 1991, copies of which are attached.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT FOR THE
 EASTERN DISTRICT OF OKLAHOMA
 
 9
 DAVID SACK, Plaintiff,
 
 
 10
 v.
 
 
 11
 JIM LOWDER, et al., Defendants.
 
 No. 90-554-S
 July 10, 1991
 ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
 
 12
 SEAY, District Judge.
 
 
 13
 Plaintiff instituted this pro se civil rights action pursuant to 42 U.S.C. § 1983 seeking to redress alleged constitutional violations in connection with his arrest and confinement on February 7, 1990. On such date, plaintiff was involved in an automobile accident which resulted in the death of another individual. Plaintiff was arrested on various charges, including driving under the influence, and eventually plead guilty to one count of second degree murder and one count of knowingly possessing an Oklahoma driver's license with a photograph of a person other than the named person.
 
 
 14
 Defendants Jim Lowder (Lowder), James Hiesley (Hiesley), Tommy Taylor (Taylor), the Oklahoma Highway Patrol (OHP), and an unnamed OHP officer have moved the court to dismiss plaintiff's complaint[1] Lowder, Hiesley, and Taylor are all OHP officers who were involved in plaintiff's arrest and confinement on February 7, 1990. Essentially, plaintiff asserts three counts against these defendants. First, plaintiff alleges his rights were violated when Lowder ordered a hospital nurse to withdraw blood from him, over his objection, after he had been arrested and transported to a local hospital. Second, plaintiff contends defendants obtained incriminating statements and evidence from him without properly advising him of his Miranda rights and Oklahoma's implied consent laws. Finally, plaintiff claims the unnamed OHP officer used excessive force when transporting him to the Wagoner County Jail.
 
 
 15
 Plaintiff's allegations with respect to his claim of excessive force are patently insufficient. These allegations are simply bald conclusory statements against unknown and unnamed individuals without any factual foundation or basis. The Tenth Circuit of Appeals has consistently held that bald conclusions, unsupported by allegations of fact, are legally insufficient; and pleadings containing only such conclusory language may be summarily dismissed or stricken without a hearing, Lorraine v. United States, 444 F.2d 1 (10th Cir.1971); Atkins v. Kansas, 386 F.2d 819 (10th Cir.1967); Hilliard v. United States, 345 F.2d 252 (10th Cir.1965); Martinez v. United States, 344 F.2d 325 (10th Cir.1965). In Wise v. Bravo, 666 F.2d 1328 (10th Cir.1981), the following appears:
 
 
 16
 "... Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice. Brice v. Day, 604 F.2d 664 (10th Cir.1979), cert. denied, 444 U.S. 1086 (1980)."
 
 
 17
 In Wells v. Ward, 470 F.2d 1185 (10th Cir.1972), the court quoted from the opinion of Judge Breitenstein in Freeman v. Flake, 448 F.2d 258 (10th Cir.1971), cert. denied, 405 U.S. 1032 (1972), in part as follows:
 
 
 18
 "... The existence of the § 1983 remedy does not require that federal courts entertain all suits in which constitutional deprivations are asserted. A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.' Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388 (1920).
 
 
 19
 While the court views the complaint in the light most favorable to the plaintiff in considering a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, the court distinguishes between well-pleaded facts and conclusory allegations. The court disregards unsupported conclusions, Mitchell v. King, 537 F.2d 385, 386 (10th Cir.1976). Therefore, the court finds that plaintiff's allegations of excessive force in connection with his transportation to the Wagoner County Jail do not state a claim for any constitutional deprivation.
 
 
 20
 Plaintiff claims a constitutional violation with respect to statements and evidence obtained from him by defendants without proper Miranda warnings or advice of Oklahoma's implied consent laws. Even assuming deficient warnings or advice, the court finds that plaintiff has failed to state a claim upon which relief can be granted. It is well settled that a failure to give Miranda warnings does not give rise to a cognizable § 1983 claim.
 
 
 21
 "The Miranda decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give Miranda warnings subjects a police officer to liability under the Civil Rights Act." (citation omitted).
 
 
 22
 Bennett v. Passic, 545 F.2d 1260, 1263 (10th Cir.1976). Clearly, any failure to give Miranda warnings or the giving of inadequate warnings does not subject officers, such as defendants Lowder, Hiesley, and Taylor, to liability in this § 1983 action. Likewise, absent a statutory directive to the contrary, any failure to advise of implied consent laws does not subject defendants to liability herein.
 
 
 23
 Plaintiff's final claim involves the forcible withdrawal of his blood by a hospital nurse at the request of defendant Lowder subsequent to the automobile accident. In sum, plaintiff alleges this incident amounts to an impermissible search and seizure of his person in violation of the Fourth Amendment to the United States Constitution.[2] Defendant Lowder contends that he is entitled to qualified immunity on this claim in that he was in compliance with Oklahoma law in requiring a blood sample from plaintiff under the circumstances of plaintiff's arrest. The court agrees that defendant Lowder is entitled to qualified immunity on this claim.
 
 
 24
 The affirmative defense of qualified immunity is available to all government officials. Harlow v. Fitzgerald, 457 U.S. 800 (1982). This immunity is an immunity from suit and not merely a defense to liability. Pueblo Neighborhood Health Centers v. Losavio, 847 F.2d 642, 644-45 (10th Cir.1988) and England v. Hendricks, 880 F.2d 281 (10th Cir.1989), cert. denied, 110 S.Ct. 1130 (1990). The question of whether a defendant is entitled to qualified immunity is a legal question for the court. Losavio, 847 F.2d at 646. The test the court must apply is an objective one which inquires into the objective reasonableness of the official's actions. Harlow, 457 U.S. at 816. Government officials performing discretionary functions will not be held liable for their conduct unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. In this context, the law to be examined is the law existing at the time of the official's actions. Id.
 
 
 25
 It is plaintiff's burden to show that the law was clearly established. Lutz v. Weld County School Dist., 784 F.2d 340, 342-43 (10th Cir.1986), cert. denied 484 U.S. 1042 (1988). The Tenth Circuit Court of Appeals has stated that "the test of what is 'clearly established law' should be determined in a particularized sense, that is, that the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Garett v. Rader, 831 F.2d 202, 204 (10th Cir.1987) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The rule for evaluating the factual correspondence between the established law and the case at hand, is one "requiring some but not precise factual correspondence and demanding that officials apply general, well developed legal principles." Garcia v. Miera, 817 F.2d 650, 657 (10th Cir.1987), cert. denied, 485 U.S. 959 (1988).
 
 
 26
 Under the facts as alleged herein, it cannot be said that defendant Lowder violated the clearly established rights of plaintiff. Following the automobile accident, plaintiff was arrested for, among other reasons, driving under the influence. Oklahoma law allows for the taking of an arrested individual's blood test, over his objection, in such circumstances as are present here. 47 O.S. § 751(A) provides, in relevant part:
 
 
 27
 "Any person who operates a motor vehicle upon the public roads, highways, streets, turnpikes or other public place within this state shall be deemed to have given consent to a test or tests of such person's blood or breath, for the purpose of determining the alcohol concentration ... if arrested for any offense arising out of acts alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place while under the influence of alcohol.... The test shall be administered by or at the direction of a law enforcement officer after having arrested such person and having reasonable grounds to believe that such person was operating or in actual physical control of a motor vehicle within this state while under the influence of alcohol...."
 
 
 28
 In addition, 47 O.S. § 753 provides, in relevant part:
 
 
 29
 "If a conscious person under arrest refuses to submit to testing or his or her blood or breath for the purpose of determining the alcohol concentration thereof, or to a test of his or her blood, saliva or urine for the purpose of determining the concentration of any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance, none shall be given, unless the investigating officer has probable cause to believe that the person under arrest, while intoxicated, has operated his motor vehicle in such a manner as to have caused the death or serious physical injury of any other person or persons. In such event, such test otherwise authorized by law may be made in the same manner as if a search warrant had been issued for such test or tests. The sample shall be taken in a medically acceptable manner at a hospital or other suitable health care facility. " (emphasis added).
 
 
 30
 These statutory provisions clearly provided a basis for the actions of defendant Lowder in requiring a blood sample of plaintiff. It is undisputed that plaintiff operated a motor vehicle which was involved in accident resulting in the death of another individual. Plaintiff was arrested for, among other reasons, driving under the influence of alcohol. Defendant Lowder's actions with respect to the blood test clearly fell within the confines of §§ 751 and 753. In no respect can it be said that defendant Lowder's actions were in violation of clearly established constitutional or statutory rights of which a reasonable person would have known. To the contrary, the allegations as set forth in the complaint establish that defendant Lowder's conduct was in conformity with Oklahoma law. Accordingly, plaintiff's Fourth Amendment claim in connection with the taking of his blood sample must fail.
 
 
 31
 Based on the foregoing reasons, the court finds that plaintiff's allegations against defendants Lowder, Hiesley, Taylor, OHP, and an unnamed OHP officer, fail to state claims upon which relief can be granted. Thus, defendants' motion to dismiss is granted.
 
 ORDER
 Sept. 17, 1991
 
 32
 This action is before the court on the motion to dismiss filed on behalf of defendants Elmer Sheperd and Wagoner County. The court has before it for consideration plaintiff's complaint, defendants' motion to dismiss, plaintiff's response to the motion, and a special report prepared by at the direction of the court, in accordance with Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978), Martinez v. Chavez, 574 F.2d 1043 (10th Cir.1978), and Robinson v. Benton, 579 F.2d 70 (10th Cir.1978).
 
 
 33
 Plaintiff has filed this pro se civil rights action seeking to redress alleged constitutional violations in connection with the treatment afforded him at the Wagoner County Jail while he was held in confinement. He instituted this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief and compensatory damages for claimed deprivations of his civil rights. Specifically, plaintiff alleges defendants failed to provide him with appropriate medical treatment for injuries he sustained in an automobile accident which resulted in his being arrested and confined in the Wagoner County Jail on various charges. Also, plaintiff complains about how he was transported to the jail and about the conditions of his cell being unsanitary and constitutionally inadequate.[1]
 
 
 34
 The special report filed herein on behalf of those officials responsible for the operation of the Wagoner County Jail shows that plaintiff was involved in an automobile accident in February 1990 which resulted in his confinement in the Wagoner County Jail. Plaintiff sustained neck, shoulder, and head injuries in the accident and was treated at St. Francis Hospital in Tulsa, Oklahoma. Following treatment at the hospital, he was released and taken to the Wagoner County Jail. While at the jail, plaintiff made numerous complaints about his health and was attended to by a nurse. Plaintiff was subsequently returned to St. Francis Hospital for further treatment and released back to Wagoner County Jail officials following treatment. Plaintiff received considerable medical treatment and medication while confined. The special report also shows that the jail was in substantial compliance with Oklahoma State Department of Health requirements during three inspections in 1990.
 
 
 35
 In Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) the Supreme Court in addressing the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention, stated:
 
 
 36
 "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." (Citations and footnotes omitted).
 
 
 37
 With this standard in mind[2], the court is of the view that the acts complained of do not show deliberate indifference to plaintiff's medical needs as alleged. It is clear from plaintiff's own complaint and response that medical care was provided. To the extent plaintiff is complaining about the inadequacy of the medical care provided by defendants, the court finds plaintiff is merely asserting a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances. It is well settled that this type of disagreement fails to give rise to a cause of action under § 1983. See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir.1977) and cases cited therein. Additionally, a central contention throughout plaintiff's complaint appears to be the inadequate medical treatment provided by St. Francis Hospital. These allegations with respect to medical care and treatment provided by a third party can not be used as a basis for imposing liability on the defendants herein. See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir.1976) ("Personal participation is an essential allegation in a § 1983 claim.") There is an absence of personal participation on the part of defendants with respect to the medical care and treatment provided plaintiff while under the care of St. Francis Hospital.
 
 
 38
 With respect to plaintiff's allegations concerning how he was transported to the jail and the general conditions of the jail, the court finds such allegations fail to rise to the level of a cognizable constitutional violation. In Rhodes v. Chapman, 452 U.S. 337 (1981), the United States Supreme Court addressed the Eighth Amendment's prohibition with respect to conditions of confinement. The court stated that the prohibition against cruel and unusual punishment prohibits conditions that "involve the wanton and unnecessary infliction of pain [or are] grossly disproportionate to the severity of the crime warranting imprisonment." Id. at 347). The court noted that although inmates may not be deprived of the "minimum civilized measure of life's necessities, ... conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. In Wilson v. Seiter, 111 U.S. 2321 (1991), the Supreme Court held that a prisoner who claims that the conditions of his confinement violate the Eighth Amendment must show a culpable state of mind on the part of prison officials. The Court held that the "deliberate indifference" standard articulated in Estelle is applicable to allegations concerning conditions of confinement. Wilson, 111 S.Ct. at 2325-27.
 
 
 39
 Clearly, under the standards articulated in Rhodes and Wilson, plaintiff's allegations that he was subjected to cruel and unusual punishment in connection with the jail conditions and by being transported to the jail in a considerable amount of pain following his release from the hospital fall woefully short of a cognizable Eighth Amendment violation. Plaintiff was transported to the jail only after being released by St. Francis Hospital and was escorted to his cell by jail officials. Additionally, the record establishes that the Wagoner County Jail was in substantial compliance with the standards required by the State of Oklahoma during three inspections during 1990, and that none of the conditions alleged by plaintiff deprive him of any constitutional right. The court finds that defendants have performed their duties in regard to the jail facility in a reasonable and proper manner, and that plaintiff has not suffered any injury thereby. Thus, the court finds plaintiff's claims in this respect are frivolous.
 
 
 40
 This court authorized the commencement of this action in forma pauperis under the authority of 28 U.S.C. § 1915. Subsection (d) of that statute permits the dismissal of a case when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. Nietzke v. Williams, 109 S.Ct. 1827 (1989); Yellen v. Cooper, 828 F.2d 1471, 1475 (10th Cir.1987). In view of its holding that plaintiff has suffered no deprivation of rights constitutionally protected, the court concludes that this action is frivolous and that plaintiff's complaint is meritless. Accordingly, this action is, in all respects, dismissed.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Also named as defendants are Elmer Shepard and Wagoner County. Plaintiff's allegations against these defendants are outside the scope of this order and involve the treatment afforded plaintiff at the Wagoner County Jail
 
 
 [2]
 The United States Supreme Court has recognized that compulsory blood extraction, undertaken to uncover evidence of intoxication, is a "search" for purposes of the Fourth Amendment, and that such procedure can amount to a meaningful interference with a possessory interest in one's bodily fluid so as to be a "seizure" within the meaning of the Fourth Amendment. Skinner v. Ry. Labor Exec. Ass'n, 489 U.S. 602, 616-17 (1989); see also Hammer v. Gross, 884 F.2d 1200, 1204 n. 5 (9th Cir.1989)
 
 
 [1]
 Plaintiff also sought relief against the Oklahoma Highway Patrol (OHP) and four OHP officers for claimed constitutional violations in connection with his arrest and confinement. By order of June 10, 1991, the court granted a motion to dismiss filed on behalf of the OHP and the four officers
 
 
 [2]
 The Eighth Amendment based deliberate indifference standard of Estelle applies to protect not only convicted inmates, but also pretrial detainees. Garcia v. Salt Lake City, 768 F.2d 303, 307 (10th Cir.1985)