**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 3, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

LAWRENCE RUBIN MONTOYA,

    Plaintiff - Appellee,

v.

CITY AND COUNTY OF DENVER;
DETECTIVE MARTIN E. VIGIL;
DETECTIVE MICHAEL MARTINEZ;
LIEUTENANT JONATHAN W. PRIEST;
DETECTIVE R.D. SCHNEIDER, JR., in
their individual and official capacities,

    Defendants - Appellants.

No. 21-1107
(D.C. No. 1:16-CV-01457-JLK)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, Chief Judge, **CARSON**, and **ROSSMAN**, Circuit Judges.

_____

Lawrence Montoya alleges Denver Police Department detectives coerced him into falsely confessing to murder in January 2000 when he was fourteen years old, causing him to spend over thirteen years in prison for a crime he did not commit. Mr. Montoya brought constitutional claims under 42 U.S.C. § 1983 against the three detectives who elicited the confession and a fourth detective who used the allegedly false statements to obtain an arrest warrant for murder. Defendants moved to dismiss

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under Federal Rule of Civil Procedure 12(b)(6), asserting the detectives were entitled to the defense of qualified immunity and Mr. Montoya's claims were barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). As relevant here, the district court denied the motion as to two claims: (1) the officers included material misstatements in the warrant affidavit in violation of *Franks v. Delaware*, 438 U.S. 154 (1978); and (2) the officers conspired to commit the *Franks* violation. The district court rejected the detectives' qualified-immunity defense and concluded the claims were not barred by *Heck*.

Defendants filed this interlocutory appeal challenging the denial of qualified immunity. They also ask us to review the district court's *Heck* ruling under the discretionary doctrine of pendent jurisdiction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of qualified immunity and decline Defendants' request to exercise pendent jurisdiction.

## BACKGROUND

### I.     Factual Background[1]

The background facts are fully detailed in *Montoya v. Vigil* (*Montoya I*), 898 F.3d 1056 (10th Cir. 2018). A summary suffices for purposes of this appeal.

---

[1] The factual background derives from the well-pleaded allegations in Mr. Montoya's Second Amended Complaint, including the arrest-warrant affidavit attached thereto. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1247 n.1 (10th Cir. 2019); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." (citing Fed. R. Civ. P. 10(c)).

On January 1, 2000, Emily Johnson was murdered at her home, and her car was stolen. As part of the investigation, Denver Police Department (DPD) detectives questioned Nicholas Martinez, who admitted he and his cousin stole the car and later picked up some friends. Detectives interviewed several individuals they suspected were in the stolen car, including Mr. Montoya.

Throughout their interrogation of Mr. Montoya, DPD Detectives Martin Vigil, Michael Martinez, and Jonathan Priest allegedly used impermissible interrogation techniques, ultimately coercing Mr. Montoya into falsely confessing to Ms. Johnson's murder. At the time, Mr. Montoya was fourteen years old and still in eighth grade. His "cognitive deficiencies and developmental delays" were "readily apparent and recognizable to an adult spending any time speaking to him." Aplts. App. vol. 1 at 250. Without Mr. Montoya's mother present, the detectives "aggressively interrogated [Mr. Montoya] using techniques known to cause false confessions, including . . . lying about evidence, manipulation, threats, false promises of leniency, and fe[eding] him statements to be repeated." *Id.* at 252.

Detective R.D. Schneider also was involved in the murder investigation from its inception and reviewed all relevant reports and statements, including those related to Mr. Montoya's interrogation. *Id.* at 257. Mr. Montoya's statements were "obviously false" in light of "the threats made by the officers, the feeding of facts by the officers, the false promises of leniency by the officers, the physical and mental intimidation by the officers, as well as[] the facts which [Mr. Montoya] got obviously wrong about the crime and the crime scene." *Id.* at 258. In addition to the obviously

3

false confession, Detective Schneider knew that other witness statements "did not even mention [Mr. Montoya] as being present during the robbery, burglary, assault or murder." *Id.* Still, Defendant Schneider authored an arrest-warrant affidavit containing statements he knew were untrue.

The affidavit generally described the crime, indicating Ms. Johnson was murdered in her home and her car was stolen. Aplts. App. vol. 2 at 327. According to the affidavit, her car was located later that same day, with significant damage to the body of the car and blood on the interior. "Witnesses in the area reported seeing several young [H]ispanic males running from the scene." *Id.* The affidavit stated that Nicholas Martinez was identified as a suspect and he confessed that he and another individual stole the victim's car. *Id.* at 327-28. "Based on subsequent witness interviews, Denver Police homicide investigators learned the identity of a third individual who was also present when the victim's vehicle was stolen from the victim's residence. This individual was identified as Lorenzo[2] Montoya . . . ." *Id.* at 328. The remainder of the affidavit describes the interrogation of Mr. Montoya, including his confession to murder. This information purportedly established probable cause to arrest Mr. Montoya for murder, aggravated robbery, burglary, and aggravated motor vehicle theft.

---

[2] According to the complaint, "during Mr. Montoya's prosecution he was referred to as Lorenzo, however, his proper first name, and that which appears on his identification documents[,] is and was Lawrence." Aplts. App. vol. 1 at 243.

Based on the affidavit, a judge issued an arrest warrant, and Mr. Montoya was arrested the next day. A jury convicted Mr. Montoya of all charges, and he was sentenced to life in prison without parole.

Mr. Montoya was incarcerated at the age of fourteen and spent thirteen years in prison before the state agreed to vacate his convictions in exchange for his pleading guilty to the charge of accessory to a class 1 or 2 felony. *See* Colo. Rev. Stat. Ann. § 18-8-105(1), (3). He was sentenced to ten years of imprisonment with credit for time served and was immediately released. *Montoya I*, 898 F.3d at 1062.

## II.    Procedural Background

Following remand from this court in *Montoya I*,[3] Mr. Montoya filed a Second Amended Complaint bringing eight claims for relief. Only two are at issue in this appeal.

First, Mr. Montoya alleges a *Franks* violation: "Defendants Vigil, Martinez, Priest and Schneider, knowingly and intentionally, or with reckless disregard for the

---

[3] In *Montoya I*, we reviewed the district court's order denying a previous motion to dismiss on qualified and absolute immunity grounds and held (1) Defendants were entitled to qualified immunity on Mr. Montoya's malicious prosecution claim; (2) they were entitled to qualified and absolute immunity on Mr. Montoya's Fifth Amendment claim; and (3) we lacked jurisdiction to consider whether qualified immunity applied to Mr. Montoya's false arrest claim. 898 F.3d at 1059. As to malicious prosecution, we concluded Mr. Montoya failed to establish the "favorable termination" element. *Id.* at 1068. The Supreme Court recently abrogated our "favorable termination" jurisprudence. *Thompson v. Clark*, 142 S. Ct. 1332, 1335-36 (2022) (expressly abrogating *Cordova v. Albuquerque*, 816 F.3d 645, 649 (10th Cir. 2016)). Because Defendants do not contend that "favorable termination" is an element of Mr. Montoya's *Franks* claim, we need not consider *Thompson*'s impact on this case.

5

truth, made false statements that were included in the Affidavit and Application for an Arrest Warrant in the underlying criminal case." Aplts. App. vol. 1 at 288. "Defendant Schneider knew, or proceeded in reckless disregard of the truth, that the information in the Affidavit for an Arrest Warrant was false and/or contained omissions of material information." *Id.* at 289.

Mr. Montoya also alleges a civil rights conspiracy in violation of 42 U.S.C. § 1983. Aplts. App. vol. 1 at 289. His claim is that Defendants "reached an understanding, engaged in a course of conduct, acted in concert and otherwise conspired among and between themselves to deprive [Mr. Montoya] of his Constitutional rights, and did deprive him of said rights, including . . . [the right to be] free from arrest by false statements and omissions in the arrest affirmation." *Id.* He alleges that using false statements in the affidavit was an overt act in furtherance of the conspiracy.

Defendants filed a motion to dismiss on qualified-immunity grounds and also argued that Mr. Montoya's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants contended Mr. Montoya's *Franks* claim failed because, even after removing the allegedly false statements, the affidavit still established probable cause for accessory. In support, Defendants relied on the affidavit's statement that witnesses identified Mr. Montoya as being present when the vehicle was stolen from the victim's home. The district court rejected this argument:

> Officer Schneider asserts that even without Mr. Montoya's confession there still would have been probable cause to arrest him for acting as an accomplice or accessory. But, as I explained, **the well-pleaded**

6

**allegations contradict that any witness placed Mr. Montoya at Ms. Johnson's home, and there is no other information in the affidavit that implicates him in any way**. Moreover, I am not inclined, under these circumstances, to apply the 'any-crime-rule' and consider whether probable cause existed for some other crime not specified in the affidavit.

Aplts. App. vol. 5 at 1329-30 (emphasis added).

As for Mr. Montoya's conspiracy claim based on the *Franks* violation, the district court found "the allegations are sufficient at this stage in the case." Aplts. App. vol. 5 at 1335. The district court also concluded *Heck* did not bar Mr. Montoya's claims. *Id.* at 1341-45. Accordingly, the district court denied the motion to dismiss as to Mr. Montoya's *Franks* and conspiracy claims.

Defendants timely appealed.

## DISCUSSION

Defendants seek reversal, contending the district court erred in denying them qualified immunity on Mr. Montoya's *Franks* and conspiracy claims. Detectives Vigil, Martinez, and Priest insist the complaint fails to establish their personal participation in the *Franks* violation because they did not prepare the warrant affidavit. And all four detectives contend any constitutional violation on the *Franks* claim was not clearly established. As to the conspiracy claim, Defendants contend the allegations of an agreement are conclusory and the district court erred by failing to separately address qualified immunity in the conspiracy context. Defendants also ask us to exercise pendent jurisdiction to decide Mr. Montoya's claims are barred by *Heck*.

We affirm the district court's denial of the motion to dismiss based on qualified immunity and decline to reach the *Heck* issue.

## I.    Qualified Immunity: *Franks* and Conspiracy

Under the doctrine of qualified immunity, "government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (citation omitted).

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo." *Id.* at 1162 (citation omitted). In reviewing a motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* (alteration in original) (citation omitted). "[I]n a § 1983 action it is 'particularly important' that 'the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'" *Id.* at 1163 (citation omitted).

8

#### A.     *Franks* claim

"In *Franks*, the Supreme Court held that affiants seeking arrest warrants violate the constitution when they knowingly, or with reckless disregard for the truth, include false statements in a supporting affidavit or omit information which, if included, would prevent the warrant from lawfully issuing." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Thus, "a Fourth Amendment violation occurs if (1) an officer's affidavit supporting [an arrest] warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." *United States v. Herrera*, 782 F.3d 571, 573 (10th Cir. 2015) (citing *Franks*, 438 U.S. at 155-56). Mr. Montoya generally alleges Officers Vigil, Martinez, and Priest coerced him into giving a false confession and Detective Schneider included this materially false information in the arrest-warrant affidavit. Mr. Montoya further claims all four defendants acted knowingly, intentionally, or recklessly in making these statements in the affidavit. The district court concluded these allegations were sufficient to make out a clearly established *Franks* violation. We agree.

Defendants advance two independent arguments on appeal to support their assertion that the district court erred. First, Defendants Vigil, Martinez, and Priest contend the complaint fails to establish their personal participation in the *Franks* violation because they did not prepare the warrant affidavit. Second, Defendants all argue it was not clearly established in January 2000 that a constitutional violation

9

occurs where, notwithstanding a *Franks* violation, an affidavit supports probable cause for another crime not specifically identified in the affidavit—here, accessory. We consider each argument, and as we explain, neither is availing.

        **1.       All Defendants personally participated in the *Franks* violation.**

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). According to defendants, "it is undisputed Defendant Schneider prepared the arrest affidavit and not Defendants Vigil, Martinez, and Priest." Aplts. Opening Br. at 22. Thus, they maintain they did not personally participate in the *Franks* violation and are entitled to qualified immunity. The district court rejected this argument, finding "Mr. Montoya alleges Officers Vigil, Martinez, and Priest knowingly, intentionally, or recklessly coerced a false confession from him with the intent that it be used to obtain a warrant for his arrest. . . . These allegations indicate that Defendant Officers personally participated in the procurement of the warrant." Aplts. App. vol. 5 at 1327. We agree with the district court.

Contrary to the officers' contentions, it is well established "*Franks* is not limited to false representations made by the affiant himself." *Marin v. King*, 720 F. App'x 923, 936 (10th Cir. 2018).  As Mr. Montoya maintains on appeal, *Franks* itself recognized "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." 438 U.S. at 163 n.6.  Thus, we "hold the government accountable for statements made not only by the affiant but also for statements made by other government employees which

were deliberately or recklessly false or misleading insofar as such statements were relied upon by the affiant in making the affidavit." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citations omitted). The notion that the officers who allegedly manufactured the false evidence somehow did not participate in the *Franks* violation is meritless.

Defendants acknowledge the complaint alleges they "coerced a false confession intending its use to obtain an arrest warrant." Aplts. Reply Br. at 4. But they contend the claim fails because it does not allege they "personally participated in drafting the Affidavit." *Id.* In support, Defendants rely on *Melton v. Phillips*, 875 F.3d 256, 263-64 (5th Cir. 2017), but that case does not advance their cause. *Melton* recognized that an officer is subject to liability on a *Franks* claim "if he helped prepare the complaint *by providing information for use in it*." *Id.* (emphasis added) (citation omitted). That is just what Mr. Montoya alleges here.

This is not a case where the plaintiff has indiscriminately lodged "collective allegations against the state." *Brown*, 662 F.3d at 1163 (citation omitted). Mr. Montoya specifically alleges three detectives coerced a false confession for use in an arrest-warrant affidavit. That readily satisfies Mr. Montoya's burden to allege their personal participation in the *Franks* violation.[4]

---

[4] In their reply, Defendants argue for the first time on appeal that Mr. Montoya's *Franks* claim necessarily fails because this Court and the district court held that use of the alleged coerced confession throughout his criminal proceedings did not violate Mr. Montoya's Fifth Amendment right against self-incrimination. Aplts. Reply Br. at 5-9. That argument is waived. *Burke v. Regaldo*, 935 F.3d 960, 1018 n.44 (10th Cir. 2019) ("[A]n appellant generally waives an argument by waiting

### 2. Defendants' clearly-established argument is waived.

In the district court, Defendants asserted there was no clearly established constitutional violation because "even without Mr. Montoya's confession there still would have been probable cause to arrest him for acting as an accomplice or accessory." Aplts. App. vol. 5 at 1329. The district court rejected this argument for two reasons. First, "the well-pleaded allegations contradict that any witness placed Mr. Montoya at Ms. Johnson's home, and there is no other information in the affidavit that implicates him in any way." *Id.* at 1329-30. "Moreover, I am not inclined, under these circumstances, to apply the 'any-crime-rule' and consider whether probable cause existed for some other crime not specified in the affidavit." *Id.*

On appeal, Defendants concede, at least for the sake of argument, that the so-called "any-crime rule" does not apply to this context based on current precedent. That is, when a *Franks* violation occurs, whether the affidavit establishes probable cause for some other crime is irrelevant—the warrant is invalid and the Fourth Amendment is violated. However, Defendants contend the inapplicability of the any-crime rule was not clearly established in January 2000. Thus, according to Defendants, because the affidavit established probable cause to arrest Mr. Montoya for accessory, the constitutional violation was not clearly established.

---

to make it in a reply brief.") (citation omitted). It is also meritless. For purposes of a Fourth Amendment *Franks* violation, it is enough that a false statement was included in the warrant affidavit. Whether use of that same information in other contexts violated the Fifth Amendment is beside the point.

The any-crime rule derives from *Devenpeck v. Alford*, 543 U.S. 146 (2004). There, the Supreme Court held that a warrantless arrest is lawful even where "the criminal offense for which there is probable cause to arrest is not 'closely related' to the offense stated by the arresting officer at the time of arrest." *Id.* at 148. In other words, a warrantless arrest is valid so long as the arresting officer had probable cause to arrest the suspect for *any crime*. Defendants argue that at the time of the alleged *Franks* violation, whether the any-crime rule extended to warrant-based arrests was not clear. In that hypothetical warrant-based scenario, the any-crime rule would provide that no Fourth Amendment violation occurs if the warrant affidavit, when purged of its recklessly false statements, establishes probable cause for any crime, whether or not it was specified in the affidavit. As applied here, Defendants contend the any-crime rule would negate the alleged *Franks* violation because, when the allegedly false statements are omitted, the affidavit still established probable cause to arrest Mr. Montoya for the offense of accessory.

Whatever the merits of this argument may be, we need not reach them. As Mr. Montoya points out, the district court expressly found that the affidavit did *not* establish probable cause for accessory, and Defendants fail to challenge this factual finding on appeal. Accordingly, they waived review of this issue.[5]

_____

[5] Mr. Montoya also contends Defendants forfeited the issue by failing to raise it in the district court. Aplee. Br. at 7-9, 16-17; *see Hayes v. SkyWest Airlines Inc.*, 12 F.4th 1186, 1201 (10th Cir. 2021) ("Forfeiture occurs when a party fails to raise a theory, argument, or issue before the district court. . . . We will reverse a district court based on a forfeited theory only under our rigorous plain-error standard . . . ."). In their reply, Defendants maintain they did raise it, and in any event, the issue is

13

Defendants' opening brief addresses the district court's finding only in a two-sentence preface to their main argument: "The District Court erred in concluding the facts outlined in the Affidavit did not support arguable probable cause for Plaintiff's arrest for 'any crime.' Below Schneider contended arguable probable cause existed for accessory to a felony due to facts suggestive of Plaintiff's participation in disposing of the victim's blood-stained vehicle." Aplts. Opening Br. at 23. Defendants do not further develop this conclusory assertion or explain why the district court's probable-cause finding was erroneous.

Mr. Montoya argues Defendants "point[] to no evidence within the four corners of the affidavit—or even to information outside the affidavit—that would have established probable cause for murder or any other crime." Aplee. Br. at 14. Nor do Defendants address "the District Court's conclusion that 'the well-pleaded allegations contradict that any witness placed Mr. Montoya at [the victim's] home, and there is no other information in the affidavit that implicates him in any way.'" Aplee. Br. at 15 (alteration in original) (quoting Aplts. App. vol. 5 at 1329-30). Defendants' "primary argument depends on [their] assertion that, after the false and misleading statements are removed, the affidavit contains facts that demonstrated

---

preserved because the district court ruled on it—forfeiture "does not apply when the district court explicitly considers and resolves an issue of law on the merits." Aplts. Reply Br. at 10 (quoting *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 991 (10th Cir. 2019)). We easily reject Defendants' latter contention because the district court did not address whether the any-crime rule was clearly established at the time, only that it did not apply *currently*. Whether Defendants sufficiently raised the issue below is a much closer call on which we need not definitively opine because, as we explain, Defendants waived review on appeal for a different reason.

probable cause to arrest [Mr.] Montoya for accessory." Aplee. Br. at 33. Yet

Defendants do "not direct this Court to any place in the affidavit where such

information allegedly appears." Aplee. Br. at 34.

Defendants failed to respond to this argument in their reply brief, again

focusing solely on whether the inapplicability of the any-crime rule was clearly

established in 2000. Failing to engage with this issue is fatal to their claim.

As Mr. Montoya correctly points out, that the affidavit established probable

cause for some other crime—i.e., accessory—is a foundational premise of

Defendants' any-crime rule argument. The district court specifically found that the

valid portions of the affidavit did not implicate Mr. Montoya "in any way." Aplts.

App. vol. 5 at 1329-30 ("[T]he well-pleaded allegations contradict that any witness

placed Mr. Montoya at Ms. Johnson's home, and there is no other information in the

affidavit that implicates him in any way."). Defendants do not meaningfully

challenge this finding on appeal and thus have waived the issue. *Burke*, 935 F.3d at

1014 ("[A]n appellant may waive an issue by inadequately briefing it. . . . 'Cursory

statements, without support analysis and case law' are inadequate to preserve an

issue." (citation omitted)).[6]

---

[6] At oral argument, when asked to point out where in the briefing Defendants challenged this finding, counsel said only that it appeared within the "clearly established" analysis. Oral Arg. at 4:32-50. Apart from what we have discussed above, it does not. Indeed, counsel agreed any challenge was not "separately articulated" and that the Defendants' briefing on appeal merely "assumes it." *Id.* at 4:50-55.

In light of the district court's unchallenged finding that the valid portions of the affidavit do not establish probable cause for accessory, whether the inapplicability of the any-crime rule was clearly established in January 2000 is irrelevant. We need not decide the issue in this appeal.

## B.    Conspiracy

Defendants further contend, for two reasons, the district court erred by denying their motion to dismiss as to Mr. Montoya's conspiracy claim: (1) the allegations as to the existence of an agreement are conclusory; and (2) the district court failed to address qualified immunity. Mr. Montoya maintains that his conspiracy allegations are sufficient under Rule 12(b)(6) and that the district court did not err by relying on its previous qualified immunity analysis of the underlying *Franks* violation.

### 1.    The conspiracy claim is sufficiently pled.

"To prove a conspiracy under § 1983, a plaintiff must show 'at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'" *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021) (citation omitted). "[A] plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. 'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'" *Id.* (citation omitted). As we have explained:

> A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all the participants therein." An express agreement among all the

16

conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences."

*Id.* at 1024-25 (alterations in original) (citation omitted).

The essence of Defendants' argument is that Mr. Montoya's complaint "does nothing more than use the catchwords of 'conspiracy' and 'conspire,'" and that all the allegations of conspiracy are conclusory. Aplts. Opening Br. at 38. This, according to Defendants, is insufficient.

This district court found otherwise. It recognized that "[w]hile cooperating does not necessarily equate to conspiring, Mr. Montoya alleges Defendant Officers did not just jointly interrogate him, they used improper tactics to coerce him and then falsified an affidavit in support of the warrant for his arrest." Aplts. App. vol. 5 at 1337. Thus, the district court concluded the "allegations—that Defendant Officers ignored the obvious falsity of his statements and that each advanced the clear common goal—nudge Mr. Montoya's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We agree with the district court.

Mr. Montoya's allegations of conspiracy are not impressively detailed, and some of the boilerplate language he uses might not hold up in every case. But under

the circumstances here, and in the context of this complaint viewed as a whole, nothing more is needed to allege conspiracy under § 1983. The factual allegations underlying the *Franks* violation are clear—Defendants Vigil, Martinez, and Priest elicited a false confession for use in an affidavit prepared by Defendant Schneider in violation of *Franks*. From this, it is reasonable to infer all four DPD Defendants implicitly agreed to use false information supporting a warrant to arrest Mr. Montoya. Again, this is not a case where a plaintiff indiscriminately alleged "collective allegations against the state." *Brown*, 662 F.3d at 1163 (citation omitted). Nor was it a rapidly evolving situation that might make a conspiracy claim implausible. *See Shimomura v. Carlson*, 811 F.3d 349, 360 (10th Cir. 2015) ("[T]he alleged agreement could not plausibly have preceded [the] arrest. The video reflects the incident, which unfolded only a few seconds before [the arrest]."). Thus, we agree with the district court that Mr. Montoya plausibly alleged a common conspiratorial objective. *Twombly*, 550 U.S. at 570.

### 2.　Defendants' qualified-immunity argument is waived.

Defendants fault the district court for failing to engage in separate qualified immunity analyses for conspiracy and the underlying *Franks* violation. However, as Mr. Montoya observes, Defendants made no conspiracy-specific qualified immunity arguments in their briefing below—they made only a general assertion that their qualified immunity defense applied to all claims. And on appeal, they fail to explain how the qualified immunity analysis should be any different for conspiracy than it is for the underlying *Franks* violation. They do not explain how the district court's

analysis was erroneous. We therefore reject their unsupported assertion. *See Burke*, 935 F.3d at 1014.

## II.    We decline to exercise pendent jurisdiction over Defendants' *Heck* claim.

"In *Heck*, 512 U.S. at 480-87, the Supreme Court held that a plaintiff could not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). Defendants contend Mr. Montoya's claims are barred by *Heck* because his accessory conviction has not been dismissed and his claims are an impermissible collateral attack on that conviction.

As threshold matter, Defendants acknowledge the *Heck* issue is not independently appealable—they ask this Court to exercise pendent jurisdiction. Mr. Montoya asserts that pendent jurisdiction is inappropriate because the *Heck* issue is not inextricably intertwined with the qualified immunity issues. We agree and decline to exercise pendent jurisdiction.

This Court has "discretion to exercise pendent appellate jurisdiction 'where the otherwise nonappealable decision is "inextricably intertwined" with the appealable decision, or where review of the nonappealable decision is "necessary to ensure meaningful review" of the appealable one.'" *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1220-21 (10th Cir. 2019) (citation omitted). "[A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the

collateral appeal *necessarily* resolves the pendent claim as well." *Id.* (alterations in original) (citation omitted). Because "the exercise of pendent appellate jurisdiction is generally disfavored[,] . . . [w]e exercise this discretionary authority sparingly." *Id.* (alterations in original) (citation omitted).

First, Defendants argue the *Heck* issue is inextricably intertwined with qualified immunity. If we agreed that *Heck* barred Mr. Montoya's claims, Defendants insist, then it would obviate the need to resolve the qualified immunity issues. However, that an alternative ground for dismissal is potentially dispositive does not mean that, for purposes of pendent appellate jurisdiction, it is inextricably intertwined with the appealable decision. The pendent claim is inextricably intertwined when "appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well," *id.* (citation omitted)—not the other way around.

Alternatively, Defendants argue the qualified immunity issue and the *Heck* issue are coterminous because both require an inquiry into whether there was probable cause. According to Defendants, probable cause is relevant to the constitutional violation prong of qualified immunity, and in the *Heck* analysis, the alleged lack of probable cause is "evidence that Plaintiff is directly challenging the validity of the conviction." Aplts. Opening Br. at 42. At most, the common probable-cause inquiry just shows there is some potential overlap in the analysis. That is not enough.

We have previously recognized the distinctions between qualified immunity and the *Heck* doctrine:

> Qualified immunity and *Heck* are analytically distinct doctrines: qualified immunity asks whether a defendant violated a constitutional or statutory right that was clearly established; *Heck* evaluates whether a favorable judgment on a prisoner's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence." The *Heck* analysis does not bear on the qualified immunity inquiry, and because *Heck* issues are effectively reviewable on appeal while the denial of qualified immunity is not, courts generally decline to exercise jurisdiction over *Heck* issues raised on interlocutory appeal from the denial of qualified immunity.

*Sayed v. Virginia*, 744 F. App'x 542, 547-49 (10th Cir. 2018) (citation omitted) (quoting *Heck*, 512 U.S. at 487 (1994)) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000) ("The *Heck* issue is not 'inextricably intertwined' with the qualified immunity issues properly before us on interlocutory appeal, nor is it necessary to decide the issue to ensure meaningful review of the defendants' qualified immunity claims.")).

Sayed is not binding precedent, but we find its reasoning persuasive here.[7] Defendants have cited no contrary authority where a court found qualified immunity and *Heck* to be inextricably intertwined. As in *Sayed*, "we need not consider the *Heck* issue to determine whether the allegations in the [second] amended complaint state a violation of [the plaintiff's] clearly established rights." *Id.* at 548 (citation omitted). Simply put, "nothing about the *Heck* inquiry is necessary to resolve qualified immunity." *Id.* We decline to exercise pendent jurisdiction over Defendants' *Heck* claim.

---

[7] *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

## CONCLUSION

We **AFFIRM** the district court's order denying Defendants' motion to dismiss Mr. Montoya's *Franks* and conspiracy claims on qualified immunity grounds. We **DISMISS** Defendants' appeal of the district court's denial of the motion to dismiss on *Heck* grounds.

Entered for the Court

Veronica S. Rossman
Circuit Judge